IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TABITHA F.,[1]                                     Case No. 6:22-cv-01272-JR

                Plaintiff,                     OPINION & ORDER

     v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                Defendant.


RUSSO, Magistrate Judge:

      Plaintiff Tabitha F. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her applications for Title II

Disability Insurance Benefits and Title XVI Supplemental Security Income under the Social

Security Act ("the Act"). All parties have consented to allow a Magistrate Judge to enter final

orders and judgement in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c).

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

ECF No. 24. For the reasons set forth below, the Commissioner's decision is AFFIRMED, and this case is DISMISSED.

## PROCEDURAL BACKGROUND

Born in December 1977, plaintiff alleges disability beginning October 1, 2011, due to leg pain, back pain, neuropathy, anxiety, depression, carpal tunnel syndrome, migraines, and fibromyalgia. Tr. 322. Her application was denied initially and upon reconsideration. Tr. 139-158. On December 29, 2017, plaintiff appeared at an administrative hearing before Administrative Law Judge ("ALJ") Elizabeth Watson. Tr. 10, 32-49. On March 27, 2018, the ALJ issued a decision finding plaintiff not disabled. Tr. 7-28. After the Appeals Council denied her request for review, plaintiff appealed. Tr. 1-6. On February 3, 2021, the United States District Court for the District of Oregon, reversed the case and remanded for further proceedings. Tr. 946-957. On April 7, 2021, the Appeals Council remanded the case to the ALJ. Tr. 958-62. On January 11, 2022, a video hearing was held before ALJ Robert Spaulding. Tr. 825, 869-910. On February 11, 2022, the ALJ again denied Ms. Fisher's claim. Tr. 845-46.[2] The Appeals Council denied a request for review, and plaintiff proceeded to file a complaint in this Court. Tr. 815-21.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since October 1, 2011, the alleged onset date. Tr. 828. At step two, the ALJ determined the following impairments were medically determinable and severe: "migraine, degenerative disc disease, obesity, asthma/bronchitis, nicotine dependence,

---

[2] On May 3, 2019, the claimant filed subsequent DIB and SSI claims, which the ALJ consolidated with her earlier claim at the February 11, 2022 hearing. Tr. 825.

fibromyalgia, major depressive disorder, and anxiety." Tr. 828. At step three, the ALJ found

plaintiff's impairments, either singly or in combination, did not meet or equal the requirements

of a listed impairment. Tr. 829.

Because plaintiff did not establish presumptive disability at step three, the ALJ continued

to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that

plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20

C.F.R. §§ 404.1567(b), 416.967(b) except that she:

> must avoid concentrated exposure to extreme cold and avoid concentrated
> exposure to fumes, odors, dusts, gases, and poorly ventilated areas. The claimant
> must avoid concentrated exposure to workplace hazards. The claimant is limited
> to simple routine tasks consistent with a reasoning level of 2 and unskilled work
> as defined by the DOT. The claimant is limited to goal oriented work (e.g.
> housekeeper) but is unable to perform at a production rate pace (e.g. assembly
> line work).

Tr. 831.

At step four, the ALJ determined plaintiff was unable to perform any past relevant work.

Tr. 844. At step five, the ALJ found plaintiff had the ability to perform jobs that exist in

significant numbers in the national economy, specifically as a housekeeping cleaner, marker, or

routing clerk. Tr. 845.

## DISCUSSION

Plaintiff argues the ALJ erred by (1) failing to find her carpal tunnel syndrome and right

shoulder issues were severe impairments at step two, (2), failing to conduct an adequate

evaluation of whether plaintiff's limitations met or equaled a Listing at step three, (3)

discrediting her subjective symptom statements without clear and convincing reasons for doing

so, (4) erroneously finding the medical opinion of Candice Mottweiler, Ph.D., unpersuasive, and

(5) posing incomplete hypotheticals to the vocational expert (VE), and relying upon the VE's testimony at step five.

## I.    Step Two

The Social Security Act provides that a medically determinable impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *see also* 20 C.F.R. § 416.921 ("The "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."). "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source" and the Commissioner "will not use [a claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.*

Step two proceeds in two steps. After the Commissioner first "establish[es] that [the claimant has] a medically determinable impairment(s)," they must next "determine whether [the claimant's] impairment(s) is severe." *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(ii) (noting that at the second step of the sequential evaluation process, "we consider the medical severity of your impairment(s)"). The ALJ may find an impairment is not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Social Security Ruling (SSR) 85-28; Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (noting that "[a]n impairment or combination of impairments may be found 'not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on [the claimant's] ability to work.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996))). "Medical evidence alone is

evaluated in order to assess the effects of the impairments on ability to do basic work activities." *Social Security Ruling (SSR)* 85-28.

"If [the claimant does] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, [the Commissioner] will find that [the claimant is] not disabled." 20 C.F.R. § 416.920(a)(4)(ii); *see also* 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

Plaintiff has the burden to present evidence sufficient to establish a "severe" impairment, i.e., one that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c); *see also Judith Y. v. Saul*, 2020 WL 7024949, at *6 (C.D. Cal. Nov. 30, 2020) ("[T]he mere diagnosis of an impairment does not establish that it was severe." (citing *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999))). To satisfy step two's requirement of a severe impairment, plaintiff must prove his medically determinable impairments, either singly or in combination, "Significantly limit your physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). To qualify, the plaintiff's impairments must last, or be expected to last, for at least 12 consecutive months. 20 C.F.R. § 416.905.

The ALJ did not err by finding that plaintiff's carpal tunnel syndrome was not a severe impairment at step two. As noted above, plaintiff has the burden of proof at step two to show both the severity and duration of her alleged impairments. 20 C.F.R. § 416.920(c). Plaintiff submitted evidence of electrodiagnostic studies in 2012 and 2018 that showed evidence of carpal tunnel syndrome, characterized as "mild" and right-sided in 2012, and "very mild" and bilateral, but worse on the right, in 2018. Tr. 1474, 1765. Plaintiff emphasizes the 2018 medical evidence

in particular, where she complained of carpal tunnel pain over a six-month period, culminating in injection treatments in September 2018. Pl. Br. at 12-13 (citing Tr. 2314-2371). The ALJ acknowledged these records in his opinion, but found the carpal tunnel syndrome non-severe both because it was "mild," and also because plaintiff resolved it with successful surgery in October 2018. Tr. 625, 650, 654-55, 659, 835, 1278, 1281. In sum, substantial evidence in the record supports the ALJ's conclusion that plaintiff's carpal tunnel syndrome was generally mild (i.e., not significantly limiting) and did not last for a continuous period of more than 12 months, especially given plaintiff's successful surgery in October 2018. Tr. 1474, 1765, 1214-71, 2375-78. Plaintiff does not otherwise point to where the medical records show significant pain over a twelve-month period, or contest the ALJ's finding that surgery resolved her carpal tunnel syndrome. *See* Pl. Reply at 12-14. The ALJ did not err in his consideration of plaintiff's carpal tunnel syndrome at step two.

The ALJ did not assess plaintiff's right shoulder issues at step two, but any error was harmless because plaintiff did not present the ALJ with evidence that her right shoulder pain would more than minimally impact her ability to perform work activity for a continuous twelve-month period. As noted above, it is plaintiff's burden to provide the ALJ with evidence that her impairment lasts at least twelve months. 20 C.F.R. § 416.920(a)(4)(ii). The ALJ noted the record showed plaintiff was diagnosed with right rotator cuff tendinitis and biceps tendinitis in July 2014, (Tr. 834, 665-67), and complained of right shoulder pain in October 2016, (Tr. 834; 738-42), and January 2021. Tr. 836; 2669-72 (noting shoulder pain had begun approximately ten days before the appointment). Such isolated complaints, spaced years apart, do not satisfy plaintiff's burden to present evidence of shoulder pain lasting for twelve continuous months. *See, e.g., Gould v. Astrue*, 2011 WL 130163, at *2 (D. Or. Jan. 14, 2011). Any error in failing to identify a

limitation as severe at step two is likewise harmless when the ALJ considers how the impairment functionally limits a claimant at step four. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Here, the ALJ considered plaintiff's sporadic shoulder pain at step four and incorporated it into the RFC. Tr. 834, 836. Plaintiff elsewhere contests whether the RFC included sufficient limitations, s*ee* Pl. Br. at 20, but she cannot show a harmful step two error when the ALJ in fact considered the symptoms she argues were omitted at step two later in the sequential evaluation process. Any error in the ALJ's failure to directly consider plaintiff's right shoulder pain at step two was harmless.

## II.    Step Three

Plaintiff also contends the ALJ erred because he failed to properly assess whether her impairments met certain Listings at step three. Pl. Br., ECF No. 13 at 14-17. Plaintiff bears the burden of proof at step three. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987). A mere diagnosis does not suffice to establish disability. *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985). "'[An impairment] must also have the *findings* shown in the Listing of that impairment.'" *Id.* at 1549-50 (quoting 20 CFR § 404.1525(d)) (emphasis in original). To meet a listing, an impairment "must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "To equal a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment[.]" *Tackett*, 180 F.3d at 1099; s*ee also Sullivan*, 493 U.S. at 531(to establish equivalency, claimant "must present medical findings equal in severity to *all* the criteria" for the listing). The ALJ's analysis of whether a claimant's impairments meet or equal a Listing need not necessarily come in the "step three" portion of his or her opinion. To obtain remand, a claimant must not only demonstrate error in the listings

analysis, but must also show that the listing was met or equaled, based upon the evidence. *See Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020) (ALJ's mischaracterization in listings analysis did not warrant remand, where there was "ample evidence" in the record supporting the ALJ's conclusion that all of the listing criteria were not met).

   *A. Listings 12.04, 12.06, & 12.15*

   Plaintiff first argues the ALJ erred in finding she had "mild limitations in interacting with others and adapting or managing herself" without adequately supporting his decision. Pl. Br. at 14. Plaintiff argues she met her burden that her limitations met or equaled "Listings 12.04, 12.06 and 12.15" when the evidence is "properly considered," given both the ALJ's "lack of analysis," and Dr. Mottweiler's opinion that she had marked limitations in interacting with others and adapting or managing herself. Pl. Br. at 14. Plaintiff does not elaborate on what evidence, when "properly considered," establishes that her limitations met or equaled these listings. *See* Pl. Br. at 14. In fact, the ALJ cited multiple aspects of the medical record at step three. He specifically noted that plaintiff can follow written instructions very well, perform simple household maintenance, prepare meals, shop, read, drive, crochet, and color as hobbies, and pay her bills. Tr. 830 (citing Tr. 292-99, 339-46, 1188-95, 1213-20). The ALJ also referenced plaintiff's statements that she is able to get along with others, spend time with family and friends, deal appropriately with authority, and has no problems paying attention. Tr. 830 (citing Tr. 292-99, 339-46, 1188-95, 1213-20). Ultimately, plaintiff's step three argument boils down to a rerun of her other, unsuccessful arguments about the persuasiveness of Dr. Mottweiler's medical opinion. *See* Pl.'s Br. at 17, Pl. Reply at 13-15; *see also infra,* § IV. The ALJ adequately explained his reasoning at step three, and substantial evidence supports the decision to find plaintiff's mental

impairments did not meet or equal Listings 12.04, 12.06 or 12.15. The Court therefore will not disturb the ALJ's step three finding on this basis.

*B. Listing 11.02*

Primary headache disorder is not specifically addressed in the listings, but epilepsy (listing 11.02) is the most closely analogous listed impairment. Social Security Ruling (SSR) 19-4p, *available at* 2019 WL 416935, at *7. Paragraph B of listing 11.02 requires documentation of a detailed description of a typical seizure occurring at least once a week for at least 3 consecutive months. *Id.*; 20 C.F.R. Part 404, Subpart P, Appx 1 § 11.02B. Listing 11.02D requires the same at least once every two weeks for at least three consecutive months. To evaluate whether a primary headache disorder is equal in severity and duration to listing 11.02B or D, an ALJ considers the following factors:

> A detailed description from an acceptable medical source of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment; and limitations in functioning that may be associated the primary headache disorder or effects of its treatment.

SSR 19-4p, at *7.

The ALJ did not err in his consideration of plaintiff's migraines, because he considered the medical evidence and found it did not equal any medical listing under Listing 11.00. An ALJ must evaluate the relevant medical evidence before concluding whether a claimant's impairments meet or equal a listed impairment. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). To qualify under 11.02, a claimant must show she "ha[s] taken medication(s) or followed other treatment procedures for your neurological disorder(s) as prescribed by a physician for three consecutive months but your impairment continues to meet the other listing requirements despite this treatment." Listing 11.00C. Here, the ALJ reasonably concluded that plaintiff's

headaches did not qualify because she did not present evidence as required under 11.00C that she followed treatment recommendations from her neurologist including limiting smoking, caffeine, and anti-inflammatory medication, and taking Depakote, which had been prescribed for her migraines. Tr. 834, 621, 1452.[3] The ALJ further noted that plaintiff's medical providers described her migraines as "not intractable" with "no aura," further suggesting her headaches were not severe and amenable to treatment. Tr. 834, 711, 2010. Because the ALJ reasonably identified a lack of evidence required to meet Listing 11.02, and plaintiff cannot identify relevant evidence the ALJ allegedly missed, the Court finds substantial evidence supports the ALJ's decision that plaintiff's impairments do not meet or equal Listing 11.02.

   *C. Listing 14.09*

   Finally, plaintiff argues the ALJ harmfully erred by neglecting to consider whether her fibromyalgia met or equaled Listing 14.09D. Pl. Br. at 15-16. SSR 12-2p addresses fibromyalgia, and identifies Listing 14.09(D) for inflammatory arthritis as a potentially analogous Listing for ALJs to consider when evaluating a claimant's fibromyalgia. SSR 12-2p. Listing 14.09(D) requires medical findings equal in severity to all of the following criteria:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>     1. Limitation of activities of daily living.
>     2. Limitation in maintaining social functioning.
>     3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.09(D).

---

[3] Plaintiff counters that the record contains "incontrovertible evidence that [she] suffers at least one migraine per week despite medication compliance." Pl. Reply at 12 (citing Tr. 41, 2010-12). But plaintiff's citations to the record reflect neither plaintiff's compliance with the recommended course of treatment, nor the three-month minimum required by Listing 11.02. *See id.*

The ALJ adequately considered plaintiff's fibromyalgia at step three, so did not err in that respect either. Plaintiff contends she suffers all four constitutional symptoms or signs in the Listing and experiences marked limitations due to her fibromyalgia flares. Pl. Br. at 15-16 (citing Tr. 1585, 1590-1592, 1595 as evidence for the four constitutional symptoms and nothing for the claimed marked limitations). And while the ALJ provided scant reasoning about plaintiff's fibromyalgia in the step three portion of his opinion, and did not specifically reference Listing 14.09D, he addressed plaintiff's fibromyalgia-related limitations at length elsewhere in the opinion. see Tr. 830, 832, 834, 835, 836, 840. Substantial evidence supported the ALJ's conclusion that fibromyalgia did not meet the rigorous requirements of Listing 14.09D: a showing of repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and marked limitations in activities of daily living, maintaining social functioning, or completing tasks due to deficiencies in concentration, persistence or pace. 20 C.F.R. Part 404, Subpart P, Appendix 1, 14.09D. Plaintiff only points to reports of fatigue and malaise in January 2014, Pl. Bf. at 17; Tr. 1585, 1589, 1592, a complaint of fatigue in November 2013, and a report that she was "always tired" in October 2016. However, these isolated complaints do not show "repeated" manifestations of "at least two" of the constitutional signs and symptoms identified in Listing 14.09D. Pl. Bf. at 17; Tr. 1595, 2034. Nor can plaintiff point to marked limitations in activities of daily living, maintaining social functioning, or completing tasks due to deficiencies in concentration, persistence or pace, further undermining her claim that the ALJ overlooked evidence of equivalency with 14.09D at step three. Because substantial evidence supported the ALJ's consideration of plaintiff's fibromyalgia, the Court finds no harmful error.

### III.    Symptom Testimony

Plaintiff contends the ALJ erred by discrediting her testimony that her fibromyalgia, anxiety, depression, PTSD, neuropathy, and worsening symptoms in her legs limit her ability to work. Pl. Br. at 18-19. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499

At her original 2017 hearing, plaintiff testified to her inability to maintain regular, continuous employment due to widespread pain and soreness, pain when walking, and pain when getting up and lifting resulting from fibromyalgia (Tr. 40); using prescribed medications for fibromyalgia (Tr. 40); four to five migraines per month, lasting anywhere from 30 minutes to the entire day, with severe nausea, pounding head pain, photophobia, and phonophobia (Tr. 41); pain, tingling, burning, numbness, and cold sensation in her hands, resulting in dropping things such as cups, spoons, plates, and her phone (Tr. 41-42); the inability to walk more than a block without sitting to rest for 10 to 20 minutes (Tr. 42); the inability to stand for longer than 10 minutes (Tr. 42); her volunteer work, which she sometimes missed due to pain symptoms, (Tr. 43); and tendinitis and bursitis in her right shoulder, resulting in the inability to do prolonged reaching or stretching. Tr. 43-44.

At the 2022 remand hearing, plaintiff added testimony concerning her inability to maintain competitive employment due to fibromyalgia, anxiety, depression, PTSD, and neuropathy, with worsening symptoms in her legs resulting in difficulty standing/walking and completing household chores, resulting in the need to sit in her recliner during much of the day (Tr. 883-884); "fibro fog", resulting in memory deficits (Tr. 890); limitations due to her right shoulder impairments (Tr. 891); worsening mental health symptoms (Tr. 891-892); and panic symptoms triggered by going to the grocery store. Tr. 892-893.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not discuss any evidence of malingering. Tr. 833. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 833. Specifically, the ALJ found plaintiff's symptom allegations

were inconsistent with objective medical evidence, and that plaintiff's improvement with treatment, conservative course of treatment, and daily activities conflicted with her symptom allegations. Tr. 838-40.

A. *Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). A claimant's failure to report symptoms to providers is another valid basis to find a claimant's symptom allegations unreliable. *Greger v. Barnhart*, 464 F.3d 968, 972-73 (9th Cir. 2006). The lack of objective medical evidence is insufficient, by itself, to justify discounting a claimant's testimony. *See, e.g., Tammy S. v. Comm'r Soc. Sec. Admin.*, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chafer*, 157 F.3d 715, 722 (9th Cir. 1998) ("the Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). When coupled with other permissible reasons, however, lack of objective medical evidence to support a claimant's allegations may be used to discount a claimant's testimony. *Batson*, 359 F.3d at 1197–98.

The ALJ reasonably discounted plaintiff's allegations about the extent her mental and physical symptoms limit her ability to work as inconsistent with the record. Conflict with

objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). At the hearing, plaintiff testified she can stand for only "about 20 minutes to a half an hour," and walk "maybe a block." Tr. 885. She further testified her fibromyalgia affects her balance and memory, and that right shoulder pain limits her ability to lift anything heavy. Tr. 890-91. Plaintiff also shared that her PTSD and depression symptoms make it difficult for her to go into stores or be in public around others. Tr. 892-93. The ALJ compared these allegations of physical limitations to medical imaging records and other diagnostic testing, which all  show a lack of abnormalities and unremarkable physical examination findings  Tr. 833, 836, 837 (citing Tr. 502 (normal lumbar MRI)), Tr. 1766 ("very mild" abnormalities shown on electrodiagnostic testing), and Tr. 625, 650, 654-55, 659, 1278, 1281 (generally normal physical exams). The ALJ also juxtaposed plaintiff's testimony about her poor mental health with several records reflecting generally unremarkable mental status findings. Tr. 833, 836 (citing Tr. 2871, 2884, 2891, 2898, 2905, 2912-13, 2919, 3040-41). The ALJ reasonably referenced these relatively mild indicators in the objective medical evidence when discounting plaintiff's testimony about her physical and medical limitations. This was a clear and convincing reason supported by substantial evidence for the ALJ to rely upon.

  B. *Conservative treatment & improvement with treatment*

  An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit holds that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v.*

*Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Additionally, an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

Conservative treatment can also be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not as disabling as the claimant reported. *Tommasetti*, 533 F.3d at 1039. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle*, 533 F.3d at 1162.

The ALJ reasonably concluded that plaintiff's conservative course of treatment for fibromyalgia, headaches, PTSD, and back pain further undermined her hearing testimony. Although plaintiff complained that pain associated with her fibromyalgia, shoulder and spine issues impacted her ability to work, Tr. 888-92, the ALJ noted that despite having had fibromyalgia and back pain "for some time," she had not tried many medications, had not yet tried acupuncture (at that time), and had been on Cyclobenzaprine for about 1-2 years. Tr. 835, 1971. The ALJ further noted that plaintiff saw a neurologist for her migraines only for a relatively brief period in 2013 and 2014 and failed to comply with much of his treatment recommendations, including quitting smoking, reducing analgesic use and caffeine consumption, exercising, and pursuing mental health treatment. Tr. 833-34; Tr. 621, 1452. The ALJ also noted significant gaps regarding mental health treatment. Tr. 836, 843. This is another clear and convincing reason, supported by substantial evidence to discount plaintiff's symptom testimony.

The ALJ also reasonably discounted plaintiff's testimony because medical records show several of her alleged symptoms responded well to treatment, such as physical therapy, medications, and acupuncture  Tr. 835). Specifically, the ALJ noted several periods of physical therapy during the relevant period, and plaintiff's reported improvement each session.  Tr. 835; Tr. 1834-63, 2088-2138, 2139-71, 2312-2414, 2739-2860. Additionally, as previously discussed, the ALJ observed plaintiff's reports of improvement in fibromyalgia pain with Nortriptyline, reports of improvement in mental health symptoms with Celexa and Wellbutrin, and reports that acupuncture was also very helpful. Tr. 832, 836, 838; Tr. 414-15, 832, 836, 838, 839; Tr. 740, 888, 1889, 2202, 2233, 2422-23, 2628, 2636, 2679, 2725. Though these medical records do not totally negate plaintiff's testimony, they are reasonable bases for the ALJ to rely upon to discount the severity of her testimony. Given that the ALJ cites many instances in the record of improvement with treatment, the ALJ supported his decision to discount plaintiff's testimony on this basis with substantial evidence.

### C.  Daily Activities

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn*, 495 F.3d at 639. "Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Molina*, 674 F.3d at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587,

594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled.").

The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain

daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not

in any way detract from her credibility as to her overall disability." *Vertigan v. Halter*, 260 F.3d

1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

(requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be

relevant to his or her credibility and noting that "disability claimants should not be penalized for

attempting to lead normal lives in the face of their limitations"). Moreover, particularly with

certain conditions, cycles of improvement may be a common occurrence, and it is error for an

ALJ to pick out a few isolated instances of improvement over a period of months or years and to

treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v.

Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ reasonably concluded that several of plaintiff's daily activities conflicted with

her testimony about difficulty with mobility, strength, and the extent to which her mental health

symptoms limit her ability to be outside the home. To discount a plaintiff's testimony, an ALJ

must cite daily activities that "meet the threshold for transferable work skills" or "contradict [a

claimant's] testimony." *Orn*, 495 F.3d at 639. The ALJ contrasted plaintiff's allegations of

physical and mental limitations with evidence that she volunteered at Goodwill five days a week,

and that she was able to consistently care for her two children—including getting them off to

school and picking them up, helping with homework, cooking for them, and bathing them  Tr.

832, 836, 839; Tr. 43, 339-46, 740. These activities stand in marked contrast to plaintiff's

testimony about her ability to stand for 20-30 minutes or walk a block at most. *See* Tr. 885.

Plaintiff's allegations about the limiting effects of her mental health symptoms likewise conflict

with her ability to regularly volunteer outside the home. *See id.* Plaintiff counters that she was often absent from her volunteer position due to pain symptoms, and characterizes her childcare and other daily activities as "modest." Pl. Reply at 16. Although plaintiff has her own interpretation of the record, it was reasonable for the ALJ to discount plaintiff's testimony in limited areas where it was contradicted by her activities. *Orn*, 495 F.3d at 639. And when there are two reasonable interpretations—plaintiff's and the ALJ's—the ALJ's interpretation must prevail. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). The ALJ reasonably contrasted plaintiff's ability to volunteer regularly outside the home and care for her children with her testimony about mental and physical health issues. This was another clear and convincing reason for the ALJ to discount these limited aspects of plaintiff's symptom testimony.

## IV.    Medical Opinion Evidence

An ALJ must consider, evaluate, and explain the weight he gave the opinions of medical professionals who saw the claimant or reviewed her records in a professional capacity. 42 U.S.C. § 405(b)(1); 20 C.F.R. §§ 416.927(b), (d) & (e); SSR 6-03p, available at 2006 WL 2329939. For claims filed before March 17, 2017, the Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

To reject the uncontroverted opinion of a treating or examining doctor, the ALJ must present clear and convincing reasons supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). At a slightly lower threshold, an ALJ can

reject a treating or examining physician's report that is contradicted by the opinion of another physician for "specific, legitimate reasons." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If there is a conflict between medical opinions, the ALJ must provide a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation of the evidence, and making findings. *Tommasetti*, 533 F.3d at 1041. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Id.* at 1040. Internal inconsistencies between a doctor's opinion and her clinical notes are likewise "a clear and convincing reason for not relying on the doctor's opinion[.]" *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

*A. Psychologist Candice Mottweiler, PhD*

On December 22, 2021, the claimant's treating psychologist Dr. Mottweiler, provided a medical source statement indicating the following: (1) Ms. Fisher has been treated by Dr. Mottweiler since August 1, 2018, with appointments typically every other week; (2) Ms. Fisher suffers from persistent depressive disorder and posttraumatic stress disorder; (3) her symptoms include depressed mood, difficulty sleeping, hopelessness, low energy, intrusive symptoms related to trauma, flashbacks, nightmares and waking up in a panic, avoidance of situations reminding her of the trauma including being in public alone, becoming highly anxious in crowded places, and panic attacks where she "shuts down"; (4) her ability to interact with others is markedly limited by her impairments and symptoms, with significant struggles in her ability to manage relationships and social interactions, as she often becomes anxious and fearful, resulting in difficulty interacting and speaking with others; (5) her ability to adapt or manage herself is markedly limited, with a distorted worldview as highly unsafe combined with persistently high

anxiety and depression impair her ability to complete routine tasks such as going to the store, engaging in leisure acting, making friends, maneuvering housing possibility, applying for work, and at times engaging in self-care and hygiene; (6) she would be expected to require additional unscheduled breaks from even a simple and routine job due to becoming overwhelmed and/or highly anxious, resulting in the need to calm herself, as she would otherwise experience increased distress that feels intolerable; (7) she would likely miss at least 16 hours or more of work per month due to the stress from a fulltime job resulting in impairing distress, in addition to frequent appointments for her medical conditions; and (8) her symptoms and reports have been consistent across the years and are likely to have existed dating back to June 30, 2014. Tr. 3097-3099.

The ALJ found Dr. Mottweiler's opinion unpersuasive. Tr. 843. Specifically, the ALJ found the opinion "poorly supported by her treatment records," noting several of plaintiff's appointments with Dr. Mottweiler and the absence of any follow-up exams. Tr. 843. The ALJ also noted as conflicts: the claimant's gap in treatment, allegedly inconsistent findings from other providers, and plaintiff's childcare activities. *Id.*

Plaintiff argues the ALJ did not adequately assess the strength of the evidence underlying Dr. Mottweiler's opinions, and instead relied on reasons that were "neither specific nor legitimate." Pl. Br. at 10. Plaintiff likewise asserts the ALJ failed to identify activities inconsistent with Dr. Mottweiler's opinion, stressing the treating relationship as evidence the opinion should be credited on review. Pl. Br. at 11.

The ALJ adequately supported his rejection of Dr. Mottweiler's opinion with substantial evidence because the opinion was both internally inconsistent and inconsistent with other objective medical evidence. As noted above, internal inconsistencies are a sufficient reason for

an ALJ to find an examining physician's opinion unpersuasive. *Bayliss*, 427 F.3d 1216; *see also*

*Montavono v. Berryhill*, 2018 WL 1069464, at *7 (D. Or. Feb. 26, 2018) (finding discrepancy

between objective examination findings and doctor's conclusion a "clear and convincing reason"

to discount the medical opinion). The ALJ reasonably found Dr. Mottweiler's opinion conflicted

with the record because her own treatment notes and plaintiff's course of treatment did not match

the opinion's marked limitations and belief plaintiff would miss excessive amounts of work. Tr.

3097-99. For example, the ALJ noted that when Dr. Mottweiler started treating plaintiff in 2018

plaintiff's mental status examination was largely "unremarkable". Tr. 834 (citing Tr. 3040-42).

The ALJ stressed that these examinations remained positive (unremarkable) through 2021. Tr.

839 (citing Tr. 2861-3096). The ALJ further found Dr. Mottweiler's opinion poorly supported

because although plaintiff continued reporting issues with stress, anxiety, and depression, she

saw her symptoms significantly improve between 2018-2021. Tr. 839 (citing Tr. 2864, 2920)

(noting for example, that with medication "[m]ood wise she feels back to normal"). The ALJ

also reasonably concluded that Dr. Mottweiler's opined limitations did not accurately depict

plaintiff's mental state for the entire covered period, as plaintiff did not pursue mental health

treatment between 2012-2018. Tr. 843. Plaintiff counters that "Dr. Mottweiler's opinion is

supported by her own treatment records with detailed, regular counseling sessions documenting

her depression, tendency to isolate herself, anxiety symptoms in public, fearfulness and PTSD

symptoms, and difficulty coping," focusing on aspects of Dr. Mottweiler's notes that confirm

this interpretation. *See* Pl. Br. at 11. This may be one interpretation of the evidence, but it was

not the ALJ's. *See Burch*, 400 F.3d at 679. Ultimately, the ALJ identified substantial internal

inconsistencies and conflict with the record, which were specific and legitimate reasons—

supported by substantial evidence—for discounting Dr. Mottweiler's opinion.

The ALJ further supported his decision finding Dr. Mottweiler's opinion unpersuasive because it conflicted with her daily activities and because it relied on plaintiff's exaggerated account of her symptoms. An ALJ may reject a treating physician's opinion if that opinion is premised on a claimant's subjective complaints, which the ALJ properly discredited, or because the doctor's opinion conflicts with plaintiff's reported daily activities. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Ford*, 950 F.3d at 1155 ("A conflict between a treating physician's opinion and a claimant's activity level is a specific and legitimate reason for rejecting the opinion."). Here, the ALJ reasonably discredited portions of plaintiff's subjective symptom testimony as exaggerated. Since Dr. Mottweiler based her opinions in part on plaintiff's self-reports of mental health symptoms, and the ALJ properly discounted those self-reports, it was reasonable for the ALJ to find the resulting medical opinions less persuasive in light of the unreliability of plaintiff's testimony. Tr. 838-43; *Tommasetti*, 533 F.3d at 1041. The ALJ likewise reasonably relied on a conflict between the marked limitations in Dr. Mottweiler's opinion and plaintiff's ability to care for her children. Tr. 843. For example, the ALJ noted that plaintiff was able to get her children up in the mornings and get them ready for school, pick them up from school, help with homework, cook dinner, and bathe them--all abilities well beyond the "marked" limitations in Dr. Mottweiler's opinion. Tr. 839; Tr. 339-46. The ALJ reasonably relied on the evidence that plaintiff exaggerated her symptoms and plaintiff's contradictory daily activities when finding Dr. Mottweiler's opinion unpersuasive.

### III.    Step Five

Plaintiff argues the ALJ committed an independent error at step five by failing to include relevant limitations in hypotheticals posed to the vocational expert. Specifically, plaintiff points to limitations the ALJ discredited elsewhere--that she would be off-task 20% of the time, or absent two days or more per month--and argues the ALJ should only rely on hypotheticals that included these limitations. Pl. Br. at 20 (citing Tr. 905). As discussed above, the ALJ reasonably rejected these limitations, and supported his decision to do so with substantial evidence. This step five argument merely rehashes plaintiff's prior arguments and therefore fails for the reasons previously articulated. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175–76 (9th Cir. 2008) (rejecting a step  five argument that "simply restates" arguments about medical evidence and testimony); *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (summarily rejecting claimant's arguments that RFC and step-five findings were unsupported by substantial evidence as "derivative of her preceding arguments addressed and rejected above."); *see also Embrey v. Bowen*, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE). Because plaintiff's step five argument adds nothing new, the Court finds the ALJ did not err at step five.

**CONCLUSION**

For the reasons given above, the Commissioner's decision is AFFIRMED and this case is

DISMISSED.

IT IS SO ORDERED.

DATED this 24th day of April, 2024.


 /s/ Jolie A. Russo                  

Jolie A. Russo

United States Magistrate Judge